Walter Huston Associates v. Wells Fargo Bank, N.A. May it please the Court, my name is Gary Bowman. I represent Providence Hall Associates Limited Partnership, which I'll refer to as PHA during the argument. I'd like to address three issues relating to race judicata. First, in these circumstances, the bankruptcy court was not an effective forum for PHA to litigate its lender liability claims. Second argument I'd like to address is whether the second and third sale orders involved the same issues as the lender liability case, which is on appeal here from district court. And third, whether the trustee and PHA were identical parties, or even in privity, regarding the second and third sale orders in bankruptcy court. The first issue, whether PHA and the Chapter 11 trustee were identical parties, or even in privity, regarding the second and third sale orders in bankruptcy court. You thought the trustee was appointed the trustee of Providence Hall? Yes, sir. And one of the... Well, how can they be? Isn't that the authorized representative of the company for purposes of bankruptcy? This is one of the fundamental problems with this case. And this case, I'd like to emphasize, is unique. This is a one-off. This case is not like any of the other Chapter 11 cases in which trustees have been appointed. So, your answer is that the trustee was not the authorized representative? The trustee was the authorized representative. But on race judicata, the issue is whether the trustee and PHA were identical parties for race judicata purposes. If the trustee's authorized to represent Providence Hall, he can make concessions, he can enter into agreements, he can enter into sales, he is Providence Hall for purposes of bankruptcy, isn't he? Yes, sir. That is true. Okay, go ahead. I don't want to distract you from where you were going, but I just don't understand it. Well, let me address that issue first, because it is a core issue to the case. In any bankruptcy case, well, let me back up. In a Chapter 7 or Chapter 13 bankruptcy case, a typical bankruptcy case in which there's a consumer, or even in a Chapter 7 where you have a company that's liquidating, a trustee is appointed. And the trustee is exactly what Judge Niemeyer indicates, that the trustee is the authorized representative of the debtor, the authorized representative of that company. But the debtor is also still there, and the debtor is still a party in interest. The debtor does not go away. So in a Chapter 7 or a Chapter 13 case, if there's an issue to be litigated... I don't understand it. The debtor doesn't go away. The debtor is the company. Providence Hall is the debtor. Yes, sir. And the person that can make decisions for that debtor is the trustee. I don't understand who's going away. I mean, you make it sound as if, and I guess this is the theory of the idea that after a trustee is appointed, someone can come still represent Providence Hall and file papers independent of the trustee. And that's true. And that's the core... Well, except there's no other person. The trustee represents Providence Hall. Well, with all due respect, I appreciate the question, because it does get at the core issue in the case. And the court is going to have to address this. But if the court addresses it, with all due respect, if the court addresses it in the way that you indicate, then the court would be missing the point. So did the bankruptcy court, and so did the district court. Yes, they did. They authorized the sale of this as approved by the trustee. And we are not here to challenge the sale orders.  You don't have to be if you take that position. If you take that position, then everything was unauthorized. In other words, we're not talking about the principles of res judicata. We're talking about whether the sale was legitimate. And if the sale was not legitimate, I think that's a different issue. That's what you seem to be saying. Yes, sir. I mean, and again, I appreciate the question. Let me unpack that a little bit, though. What we are here on is whether the lender liability claims, which PHA has, whether they are barred by res judicata because the trustee entered into sale orders. So the issue here is a res judicata issue. Now our position is that the lender liability claims, which PHA has, are not barred by res judicata sale orders. The trustee did have the authority to enter into sale orders. No question. We're not saying he didn't. That's, I think, not entirely accurate because what we're facing in this case are court orders approving the sales. It's not the trustee's conduct. The trustee presented it to the court, but the court approved the orders and the sales were conducted under the approval of the bankruptcy court and the district court. The question then is, are those orders preclusive of subsequent litigation that could challenge the elements of those orders? Yes, sir. That's correct. I mean, that is a correct statement of the question if I stated it in a different way than I was wrong. That is the question. The sale orders are valid orders. We're not saying that the sale orders aren't valid orders, and we're not saying that the trustee didn't have the authority. They're more than just valid orders. They're final orders. Yes, sir. They are. That's not the issue here. They are final orders. Part of the issue is because, you know, there has to be a final decision for res judicata from preclusion to attach, and as I understand it, these orders are appealable, generally only final orders that are appealable. And I just, they're made pursuant, the sale orders are pursuant to 11 U.S.C. 1363, and those, I mean 363, and those orders are immediately appealable. So there has to be a, they have to be final, aren't they? Yes, sir. They are final. They are final orders. That's important to res judicata. It is. It can't be just some interim order. It is an important consideration, but we're not contesting that they're final orders. All right. We're contesting that they're final orders on the merits of PHA's lender liability claims. I understand how they could be anything other than on the merits, because as I read the, as I read the orders, they direct the sale proceeds to go to Wells Fargo, and if the net proceeds of the respective sales are going to be paid directly to Wells Fargo, why wouldn't that be a rather clear indication that on the merits, Wells Fargo had the better claim? Otherwise, how could it be receiving the proceeds of the sale? There are three reasons. Okay. The first reason is that the issues on a sale motion under Section 363, there are six factors that have to be considered as to whether a sale can be approved. The factor that's relevant. Could you back the question up, please? I want to know why Wells Fargo would be receiving the proceeds of the sale if they had engaged in any kind of shady dealings in connection with the loan, with, in connection with, you know, if they had, if there was some underhanded or illegal practice in connection with the I disagree that it would be impossible. An example, an analogy, is that in this Court's cases regarding lawyer malpractice, there, Grouse v. Englander, which is one of the cases that's cited here, but a later case, Wiener v. Fort, which is not in the briefs, in what the Court indicated is, what the Court held in Wiener v. Fort is that a court order approving an attorney's fee and allowing the attorney to get paid is not res judicata as to the debtor's later claim that the lawyer committed malpractice. What do you say was Wells Fargo's fraud in, in, in connection with this loan? Well, there are a number of things. There are a number of things. Those are not. Give me one. Okay. One of them is that they overcharged the interest that they were supposed to charge under the London Interbank overnight rate, the LIBOR rate.  If that, if that is true, you had a chance to raise that in bankruptcy? No, sir. And I, and this is very important. Well, that's your, well, res judicata applies not only to arguments you did raise, but that those you could have raised. Yes, sir. Let, the, the, the Court's questions. This is an adversary proceeding. The Court's. This is a core issue. Why couldn't PHA, why couldn't the trustee have raised if they thought there was any merit to the claim at all? Why couldn't the trustee have raised the point that the interest charge was usurious or whatever? The trustee could have raised it. All right. The Court is missing. Doesn't res judicata apply? No, sir. The Court is missing. The trustee could have raised. The Court is missing the core issue here. In, in any proceeding in bankruptcy court, the sale orders that you're talking about, the adversary proceeding, which PHA brought, PHA was a party in interest. Section 1109 of the Bankruptcy Code defines parties in interest. And PHA, the debtor, was a party in interest. The trustee, of course, is also a party in interest. And the trustee does have the powers that the Court described. But PHA is also a party in interest and has a right to be heard. Now, on the sale orders, it's. What was that last statement? PHA is a party in interest and has the right to be heard. Except the trustee is the one that's going to present its arguments. No, sir. That is not correct. And that is an issue that is presented squarely to this Court. Let's go right back to where we started in the beginning. The question is, what is the authority of a trustee representing a debtor in bankruptcy? A trustee does not represent a debtor in bankruptcy. That is a mistake. And if this Court writes an opinion that is like that, that says that, that would be mistaken. What is the authority of the trustee in your judgment? Okay, it's on page 32. No, I just want you to. Yes, sir. The trustee has the authority to represent the interests of the debtor. He does have the authority to represent the interests of the debtor. But the debtor also has the right to be heard as a party in interest. In Chapter 11, because Section 1109 says so. The trustee is in privity with the debtor. He is not in privity. He is in privity with the debtor, but that is not the issue here. But he is in res judicata because the res judicata applies not only to parties, but to their privies. And this, these, a problem with this case is that these. You're trying to achieve this complete separation between the debtor and the trustee in a bankruptcy proceeding and that would be, that would be unusual. No, sir. It is not unusual. It is typical. It is normal. This is the only case in which that has not occurred. That is why this case is so confounding, is because the court is looking at it as if the normal things that happen in a bankruptcy case happen, and that is not what happened here. What do you say should have happened in this case? What should have happened here is that Providence Hall filed this adversary proceeding bringing its lender liability claims. It should have been allowed to litigate those lender liability claims. Even though the trustee had been appointed to litigate and or concede those claims? It should have been allowed to litigate. What's the point of having the trustee? The trustee can come in and substitute. It can substitute as the plaintiff in the AP. And if the court allows it to substitute, then it can litigate that AP. Litigate or settle? It can litigate or settle that AP, but Providence Hall still has the right to litigate the AP. The court has before it. That doesn't make any sense. Well, that is how it works, and it's unfortunate that at this level. You're making these declaratory statements. Yes, sir. Where is the authority that the debtor, through some executive in the debtor's company, can Well, with all due respect, we're not saying that the debtor has the right to override the trustee. The trustee dismissed this. The trustee elected not to pursue these claims because in the trustee's, presumably in the trustee's judgment, they didn't have merit. The trustee certainly had the right to do that if he was the plaintiff in the AP. Now, an example is this court sees cases come up all the time. I mean, it's just a common thing where you have the plaintiff being, or the defendant, the party, being so-and-so trustee of a party. A Providence Hall was the plaintiff in the adversary proceeding. Yes, sir. That's correct. All right. And that was initiated while the executives of the company were in charge of the company. Yes, sir. Subsequently, while that was pending, the court appointed a trustee to represent the company. At that point, doesn't the trustee have a right to conduct the litigation exclusively? No. And that's what— Okay. Now, where— Oh, yes, sir. Give me authority for that. Okay. On page 32 of our brief, we cite— No, I don't want—I just want you to give me authority. Do you have a case? Yes, sir. Well, I mean, the statute is quite clear. Okay. What's the statute? The statute is 11 U.S.C. section 1109. And what's that say? That says that the parties in interest are, among other people, the debtor and the trustee. One does not exclude the other. You have a debtor and you have a trustee. Okay. You're ignoring the role of the trustee to represent Providence Hall and make decisions. No, sir. I can—I mean— Let me ask you this. Yes, sir. Do you think Providence—the trustee acted illegally in dismissing the adversary action? No, sir. He didn't act illegally. Well, let me— Do you have authority to do that? He did not have the authority to do that. No. He didn't— Well, what's his representation scope? When he comes in and represents the debtor, what is the trustee's? You're arguing derivatively from the fact that everybody is a party in interest. Therefore, everybody has a position in the bankruptcy. But that doesn't address particularly what the role of the trustee is vis-à-vis the debtor. Yes, sir. I'd love to answer your question. I am out of time. May I go ahead? This is a typical AP in bankruptcy. The trustee can be the plaintiff. The debtor also can be a plaintiff in bankruptcy. If the debtor has initiated— Let's address my question. My question is if the Providence Hall was the plaintiff in this adversary proceeding and the trustee is appointed, can the trustee then litigate that claim or dismiss that claim exclusively? Only—exclusively is no, only if he substitutes as plaintiff or files his own— No, he represents Providence Hall. He's not going to substitute as plaintiff. So he comes to the bankruptcy court, and he says on behalf of Providence Hall, I want to dismiss. He's acting with— You come in there, and you say on behalf of Providence Hall, you do not want to dismiss. I don't understand that's the scheme of the bankruptcy code. It's unfortunate that at this level, I mean with all due respect, that it's removed from the actual nuts and bolts, but that is how it works. The trustee— Can you take this up again on rebuttal then? Yes, sir. Thank you. Mr. Tarkenton. Excuse me. I left my papers up here. Thank you, Your Honors. May it please the Court, my name is Jeffrey Tarkenton. I represent Wells Fargo Bank, N.A. Your Honors, the district court correctly held the doctrine of claim preclusion or rejudicata applied to the three sale orders that the bankruptcy court entered in this case, pursuant to Section 363 of the bankruptcy case, and they bar the appellant's current claims against Wells Fargo. Briefly, a factual background I think is helpful. I think from the questions the Court has answered, the Court is well aware of the facts. Providence Hall owned three pieces of commercial property. It also owned a subsidiary, Dixon Properties, which in turn owned one commercial piece of real property. Substantially, all of the equity interests of Providence Hall were owned directly or indirectly by Victor Guerrero, the debtor's principal. Early in the case, almost immediately after the case commenced, Mr. Guerrero engaged in improper activities, including transferring funds improperly out of the bankruptcy estate without court approval, without disclosure. The bankruptcy court, because of that and a number of other actions, took the unusual step of appointing a Chapter 11 trustee for Providence Hall. Mr. Parkinson, is that, as you put it, unusual step? Does that somehow circumscribe the authority of the trustee simply because there is a debtor in a Chapter 11 that I suppose, made by definition in the statute, be also called a party in interest? Absolutely not, Your Honor. As the Court's questions earlier demonstrated, once a trustee takes over, the debtor is no longer a debtor in possession. It has no control over assets, management, anything. What is the debtor's avenue for relief if it thinks that the trustee is acting contrary to its authority and or powers? Well, the debtor doesn't have any separate existence at that point. I mean, it speaks to the trustee. The trustee speaks for the debtor. But does everyone have a claim for breach of fiduciary duty, if that were the case? Exactly. And there are other parties in interest, many other parties in interest, in a bankruptcy that can take that action. Not the debtor. Not the debtor, but other parties in interest, including equity holders. Well, your statement is directly contrary to what Ms. Baumann said, that I asked him whether the trustee had the exclusive right to manage the litigation after the trustee is appointed. He said no. And you say he does have that right. He has the exclusive right. There's no case law, none, that would suggest otherwise. And debtors have no separate existence once a Chapter 11 trustee is filed. The Chapter 11 trustee is the one who leases the properties, sell properties, replaces a roof, hires employees, fires employees, calls and hires counsel. There is no more management of a debtor, a corporate debtor, to pick up a phone and call and direct anyone to do anything on behalf of the debtor. The appointment of a trustee is for those very reasons, to simplify the administration of the estate. And it seems to me if the debtor continues to have a separate existence and can nip at the trustee's heels at every turn in the road, then much of the reason for the appointment of a trustee is undercut. It is not possible for the debtor to have two heads, essentially, and operate. That's what I'm saying. It would complicate the administration of the estate considerably if you had sort of two voices in the courtroom, sometimes in agreement, sometimes in disagreement and everything. It seems to me the administration of bankruptcy estates can get very complicated. There are a number of decisions to be made at every turn in the road and a number of interests to be considered. And the idea that we have two co-equal parties or two different parties in interest throughout the proceedings, I mean, I'm just thinking of just purely the administrative simplicity. Isn't that compromised? Yes, Your Honor. The court is correct. And the case law states, I mean, the trustee is vested with all the rights and responsibilities. He's the only one who can bring an action. He's the only one who can ask the court for authorization to settle an action. If he has done something wrong, then there are other parties in interest, including equity holders in a surplus case who would have standing to petition the court. It's always the bankruptcy court that reviews all these actions and can refuse to approve them. Everything is subject to bankruptcy court approval. So at the hearing to approve the sale of these properties, was there any role for the debtor to play in getting up to a lawyer and objecting? There was absolutely no role. But there was a role for equity, Mr. Guerrero, and he did. You know, we have three sale orders. The first sale order was actually the first sale motion was filed by the debtor, and it sought authorization to sell property and to pay Wells Fargo, and that the order that was entered granting that motion directed the payment of the net proceeds to Wells Fargo. The second sale order, that motion, Mr. Guerrero attended the first hearing, and he asked the court to continue that hearing because he was considering coming in and bidding on that piece of property. And the court continued the hearing to a later date, and as the record reflects, Mr. Guerrero then contacted the trustee, said that he had decided not to bid on the property, and that he did not object to the sale going forward. The third motion, the third sale motion, Mr. Guerrero did appear at court. He did object. The court overruled that objection and authorized the sale, notwithstanding his objection. And that is identified in the trustee's report of sale, which is in the material, in the appendix. So there is a role for other parties. There was a role for Mr. Guerrero as the equity holder, and he exercised that. And now, but as a result, we do have three final orders of the court authorizing the sales, directing the payment of net proceeds to pay off the Wells Fargo obligation. The obligations are defined to include both loans as well as a swap agreement obligation. Did the trustee refuse to go forward with the adversary action simply because he just didn't think he had a leg to stand on? Your Honor, we filed a motion to dismiss the adversary, and it was shortly thereafter that the trustee was appointed. The trustee would have had to have filed an opposition to that motion to dismiss, and I believe from my conversations with him that he decided that it lacked sufficient merit to. Did he never file the motion to dismiss? No, he never filed an opposition. Correct, Your Honor. He never filed an opposition. Rather, we agreed to extend the deadline for him to file an opposition and then ultimately dismiss the case consensually. So you have a sale order of a—you have the trustee here representing the debtor, feels that the case does not warrant going forward and feels that it's not worth contesting the motion to dismiss, and then you've got a bankruptcy sale order which approves the sale of the properties and the proceeds of the sale going to Wells Fargo. So it seems that at a variety of junctures in the bankruptcy court proceeding, both the court and the trustee deemed this case to be meritless, correct? Well, I will say, I mean, the bankruptcy court probably never looked at the adversary proceeding. Right, but the bankruptcy court directed, if you look at the sale order, the bankruptcy court directs that the sale proceeds go to Wells Fargo. And doesn't that implicitly say that there was a valid lien? Well, I don't think there was any question there was a valid lien. Well, that's basically—there's now—Mr. Bowman raises that question now as to whether there was. He thinks it's obtained by fraud, I guess. Yeah, I don't—in my view, there's no question there were valid liens. In my view, the loans were made correctly, and the one loan matured, which triggered the other obligations becoming due and payable. And because of that, Providence Hall filed bankruptcy. There was nothing untoward done. But if the bankruptcy court had had any question about it, would he have approved or would she have approved the sale order? The court—if the court thought there was a significant issue, then I expect the court would have raised that issue and asked us to address it. The court never appeared to have any concerns about the issues raised in the adversary proceeding. All I'm saying is that, you know, just as far as the component of res judicata, which requires that the earlier decision be on the merits, you have both a trustee, Mr. Albert, failing to file an opposition to the motion to dismiss, the reason being that he didn't feel that the case had substance to it. And then you get a bankruptcy court which is affirming or which is ordering the sale of the properties and ordering the sales proceeds to go to Wells Fargo. And in combination, doesn't that—res judicata is a practical concept. There's no particular mystery to it. We asked, as a practical matter, doesn't the way the bankruptcy proceeding transpired give us a high degree of confidence that there was a decision made on the merits? And that was that the claim against Wells Fargo for irregular behavior in connection with the loan was not a substantial one. Correct, Your Honor. And in this context, what happened was, you know, the trustee reviewed the adversary proceeding, decided, you know, it did not—it lacked merit, so he dismissed it or agreed to dismiss it, agreed with our motion, which was granted in part to dismiss without prejudice, but it was dismissed. And then he filed two sale motions. And in the two sale motions, he asked the court for authorization to pay off the full amount of Wells Fargo's claim. And— Was there excess that came back to the estate? There was, Your Honor. So the Providence Hall benefited from the sale, too. Exactly. And, in fact, there was one piece of property that was never sold, so that went back to Providence Hall also. And all creditors were paid in full. All administrative expenses were paid in full. The trustee, you know, after his review of the facts alleged in the adversary proceeding, still asked the court for authorization to pay the full amount of Wells Fargo's claims, believing that there was no merit in the adversary proceeding, and the court approved. And that's where—you know, that's the basis for the rejudicata. What I understand to be the principal gripe complaint that Providence Hall has with Wells Fargo now in the conduct of the— Well, there seem to be two— I know there's several, but— I believe there are two main buckets of compliance. One deals with the execution of a swap agreement, which it has some issues with, I think, based on other cases that have been filed in this district or this circuit against Wells Fargo, all of which I believe have been dismissed. And then the other bucket dealt with the negotiations immediately before the bankruptcy, before the loan matured, regarding extending the loan. And they have asserted that Wells Fargo's behavior in those negotiations triggered lender liability claims. That's my understanding. So there are a number of other circuit decisions in this area, and I think the point is made that there's something like three different circuit decisions holding that sale orders from the bankruptcy court can be rejudicata in a later civil suit. If we were to come up with an opposite result and say that there was no preclusion here, would we be creating a circuit split— Yes, Your Honor. —with those other circuit courts? Yes, Your Honor. Why do you say that? Because I believe those three circuit court decisions are clear that a sale order in a bankruptcy case acts as rejudicata. It can be rejudicata. Does it have to be? Probably not have to be. I expect it depends on how the court fashions the order. But I think if the court stated that as a matter of law— I mean, let's suppose that the trustee had pressed forward with the adversary proceeding, and let's suppose that the sale orders of the bankruptcy court had read differently from the way they did. Would we have a different case in terms of preclusion? We might? Well, we might. If the orders were different, I guess it would depend on exactly what those orders said. So we're not talking about necessarily an invariable rule. We're simply talking about the fact that preclusive effect can certainly attach to a sale order of the bankruptcy court, but maybe need not inevitably. Correct. Although I think in this case it's a much stronger argument that preclusion attaches than in those other three cases. Yeah, I understand your argument on that point, because the other three cases didn't have favorable facts for preclusion that yours did, and yet they still found preclusion. But we have the orders expressly directing the payment of the Wells Fargo obligation, which I think puts us essentially even in a different category than those other three, because you do have bankruptcy court sale orders that are final directing the payment of Wells Fargo, which go much beyond just a typical argument that a sale order— which is this one—would automatically be a final order, would it not? Because it's appealable, and normally— I mean, there are some interlocutory court orders that are appealable under 1292 and preliminary injunctions, but as a rule, the general rule under 1291 is that only final orders are appealable. So the appealability of Section 363, pursuant to which the sale took place, is an appealable order, and probably that argues for its finality. Yes, Your Honor. I don't think there's any question, any authority that suggests that bankruptcy court sale orders are not final orders for appeal purposes. And, in fact, I think what very often happens is the issue is whether not only— I mean, it is appealable, but whether the appeal is moot, because if the sale closes prior to the court hearing an appeal on the sale, then the appeal is moot. So, in fact, there's a lot of case law, in fact, on that issue because— On the finality of it. Yes, because it's dealing with the mootness issue of appeals of sale orders. And your view is it would have to deal with the same subject matter because, really, in essence, we're talking about the very same transaction here, which is Wells Fargo— both in the bankruptcy court proceeding and in the later civil suit, we were talking about Wells Fargo's—they were challenging Wells Fargo's conduct in connection with the loan. So you have the very same subject matter. Correct. As I say, race judicata, there's no particular mystery to it. It's really a very practical sort of commonsensical thing. And, you know, you ask, well, really, is there something in the ends— would the ends of justice be served by litigating this case twice? And your point is the merit—the lack of merit in the whole thing has been sufficiently aired and adjudicated before. Exactly, Your Honor. Okay. I believe my time has expired. I appreciate your time. Thank you. Thank you, sir. All right. Mr. Bowman. Well, let me try to go back to the core issue in the case. And Mr. Tarkenton made the point, which he makes in his brief, that the debtor speaks to the trustee. No, he doesn't. That is incorrect. And when the panel goes to write its opinion, it will have to look at 11 U.S.C. 1009. And there is no way to square an opinion that says that the debtor speaks to its trustee with the plain language of 11 U.S.C. 1009. A garden variety, typical, happens every day occurrence in bankruptcy court. Do you mean 1109? No, 1009. 11 U.S.C. 1009 B. Typical occurrence in bankruptcy court. A consumer files bankruptcy. Well, you said 1109 earlier. I'm sorry. It's 11 U.S.C. 1009. What does that say? Okay. It says that a party – and it relates to Chapter 11 because it's in – it's 1109. I'm sorry. It's 11 U.S.C. 1109. Okay. I'm sorry. It is 1109. It is 1109. I'm sorry. Oh, I've read that. That just basically says who the parties are interested and who can present claims and things. At the end of the section, it says – it has the parties' interests. It says may raise and appear and be heard on any issue in a case under this chapter. A debtor is allowed to be heard in a case in Chapter 11 even after – Yeah, that's a general proposition. But in this case – and this is the point that seems to have dropped out of the oral argument here. In this case, the bankruptcy court did not allow PHA to be heard at all. The trustee was heard. But the trustee and the debtor are both allowed to be heard. Again, going back to my example. Well, you're basically saying that when a trustee is appointed, the trustee is not exclusively representing the debtor in the proceeding. No, sir. That is not exactly what I'm saying. I'm saying that the – You said earlier. I'm saying that the debtor has a right to be heard. That is what I'm saying. That debtor is heard through the trustee. No, sir. That is not correct. The debtor has a right to be heard separately. Now, on page 32 of my brief, there's a good opinion by Bankruptcy Judge Stone from the Western District of Virginia that addresses this in the Chapter 11 context. And I urge the court to look at it. This is a strange case because it involved a Chapter 11 trustee. And for – Let me ask you something practical matter. Yes, sir. Mr. Guerrero sought the first sale. He was aware of and didn't object to the second sale. He was going to bid on it. And the third sale, he appeared and wanted to speak. And the bankruptcy court said, you can't speak on behalf of Providence Hall. Why isn't that – all that presence? Can we take that into account? In other words, it seems to me the sale of the properties was something that he would have approved anyway because he sought it with respect to one. And he ultimately got the debts paid off. The values seemed to be good market values. Nobody objected to those. And there was an excess. And with respect to your swap claim, that would wipe out the other claim, the idea that there was no extension of the – that they misrepresented that they were going to extend the default date because here now you go ahead and execute on the default. But the swap claim was basically a fee provided for in the agreement, right? And that was paid. The swap was paid. That question, the way it states the facts, conflates several issues. Mr. Guerrero did not seek the first sale. PHA filed a motion to sell the property. Who is that? Is it Mr. Guerrero? Wasn't he representing PHA in that one? No. No, sir. Mr. Guerrero is an equity security holder. PHA is a separate partnership. Okay. Now, so PHA sought – PHA was the party that sought that sale. That's true. Then a trustee was appointed, Mr. Guerrero himself personally, but PHA did not want the second and third sale orders entered. But they weren't allowed to say so because the court would not allow – at least PHA, which is the party here, a party I represent, wasn't allowed to say so because the court would not allow it to be heard. And it had a right to be heard. PHA had the right to be heard, and what it would have said is the opposite of what the court said, that the prices are adequate, there's a good sale. PHA would have said no, it wasn't, and presented evidence to that effect but couldn't because the court would not allow it to be heard. Now PHA is bound – the status of the case is now – PHA is bound by res judicata, by an order to which it could never be heard, and it is stuck with – It was heard because the trustee represented it. We just – it wasn't heard. It was not allowed to be heard. The trustee was heard, but PHA had – People have representatives in court all the time. I mean that's what lawyers do. Lawyers come in and they represent a client in the court. The client doesn't necessarily have a right to be heard. If the lawyer mangles the case, then there's a separate action later against the lawyer. But lawyers bind clients all the time. Well, I'm out of time, but I would like to respond to that. Yeah, sure. In a Chapter 7 case, next door, debtor comes in, files bankruptcy. Credit card company files a proof of claim. The debtor is entitled to object to the proof of claim. The trustee is also entitled to object to the proof of claim. The trustee's objection to the proof of claim does not preclude the debtor from also objecting to the proof of claim. That's a basic, simple thing. Exact same scenario here, except that paradigm was not applied in this case because it was a Chapter 11 case. It got confusing because Chapter 11 trustees are so rare. You had a brand new judge, his first hearing in the case. It was confused, but it was wrong. Thank you. We'll come down and greet counsel, and then we'll proceed into our final case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Albert Diaz